IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MOHAMMED BASSIM AL-KHAFAJY,　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Petitioner,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　NO. 3:19-cv-00248
v.　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　JUDGE RICHARDSON
DISTRICT DIRECTOR, ICE NEW　　　　　　)
ORLEANS FIELD OFFICE,[1]　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　　　　　　)

## MEMORANDUM OPINION

Petitioner Mohammed Bassim Al-Khafajy filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254, challenging two Davidson County convictions to which he pleaded guilty in September 2016. (Doc. No. 1.) Respondent filed an Answer. (Doc. No. 23.) Petitioner also filed several discovery-related motions (Doc. Nos. 24, 26, 27, 36), two motions for resentencing (Doc. Nos. 31, 35), a motion to appoint counsel (Doc. No. 32), and a motion regarding a detainer placed on him by U.S. Immigration and Customs Enforcement ("ICE") (Doc. No. 34). For the following reasons, Petitioner is not entitled to relief under Section 2254, his pending motions will be denied, and this action will be dismissed.

## I.　　Proper Respondent

As a procedural matter, the Court must first address the identity of the proper respondent in this case. Petitioner initially named two Respondents: the State of Tennessee and Doug Thurman.[2] (Doc. No. 1 at 2.) But "the proper respondent to a habeas petition is 'the person who

---

[1]　　As discussed below, this caption now reflects the proper respondent to this case, and the Clerk will be directed to update the docket accordingly in the accompanying order.

[2]　　Thurman was a prosecutor in Petitioner's criminal case (*see* Doc. No. 21-1 at 33 (State's response to Petitioner's pre-plea request for discovery); Doc. No. 13-1 at 18 (plea petition)) and represented the State

has custody over [the petitioner],'" meaning the "'the person' with the ability to produce the prisoner's body before the habeas court." *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004) (quoting 28 U.S.C. § 2242).

Petitioner was incarcerated at Metro-Davidson County Detention Facility ("MDCDF") when he filed the Petition (Doc. No. 1 at 2, 17), so the proper respondent at that time was the MDCDF Warden. *See Rumsfeld*, 542 U.S. at 435 (citations omitted) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held."). Petitioner's most recent filing, however, reflects that he is currently confined at Jackson Parish Correctional Center ("JPCC") in Jonesboro, Louisiana. (Doc. No. 36 at 5.) The Court takes judicial notice that Petitioner is in ICE custody at JPCC.[3] The Sixth Circuit has explained that the proper respondent to a habeas petition brought by an individual in ICE custody is "the INS District Director for the district where [the petitioner's] detention facility is located." *Malam v. Adducci*, --- F. Supp. 3d ----, 2020 WL 1672662, at *6 (E.D. Mich. Apr. 5, 2020) (quoting *Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003)). The Court takes judicial notice that JPCC is within ICE's New Orleans Field Office.[4] Accordingly, the District Director for ICE's New Orleans Field Office will be substituted as the respondent in this case.

---

at the trial court level of Petitioner's post-conviction proceedings (*id.* at 39 (State's answer to Petitioner's amended post-conviction petition); Doc. No. 13-2 (post-conviction hearing)).

[3] The Court "may take judicial notice of 'a fact that is not subject to reasonable dispute' either because such a fact 'is generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). A search of ICE's Online Detainee Locator System using the "A-Number" listed on Petitioner's most recent mailing envelope (Doc. No. 36 at 5) and the "Country of Birth" listed within one of Petitioner's pending motions (Doc. No. 34 at 2) reflects that Petitioner is currently in ICE custody at JPCC. *See* Online Detainee Locator System, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://locator.ice.gov/odls/#/index (last visited Sept. 20, 2020).

[4] *See* Jackson Parish Correctional Center, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, https://www.ice.gov/detention-facility/jackson-parish-correctional-center (last visited Sept. 20, 2020).

## II.    Background

On February 8, 2016, while Petitioner was on probation (Doc. No. 21-1 at 53–54), the Metro Nashville Police Department ("MNPD") arrested him on six charges: (1) possession with intent to sell or deliver a Schedule VI controlled substance, namely 14.175 to 4,535 grams of marijuana; (2) sale of a Schedule II controlled substance, namely hydrocodone; (3) employing a firearm during the commission of a dangerous felony; (4) unlawful possession of a weapon; (5) assault of a police officer; and (6) resisting arrest. (*Id.* at 97–108.) About a week later, the Davidson County General Sessions Court held a preliminary hearing and bound the charges over to criminal court. (*Id.* at 4; Doc. No. 13-2 at 7.) In May 2016, Petitioner's counsel filed a motion to reduce bond, and the court denied it after a hearing. (Doc. No. 13-2 at 59; Doc. No. 21-1 at 23–25.)

In June 2016, a Davidson County grand jury indicted Petitioner on eight counts, adding reckless endangerment and possession of drug paraphernalia to the six arrest charges.[5] (Doc. No. 13-1 at 3–12.) On September 22, 2016, Petitioner entered a plea agreement negotiated by counsel. Petitioner pleaded guilty to the following two offenses, with the other six counts dismissed: (1) the possession with-intent-to-sell marijuana count, as charged; and (2) possessing—rather than employing—a firearm during the commission of a dangerous felony, a lesser included offense of the indicted charge. (*Id.* at 13–18.) On the drug conviction, Petitioner received a two-year sentence to be served at 30% release eligibility. (*Id.* at 13.) And on the firearm conviction, Petitioner received a three-year sentence, which a statute required to be served consecutive to the two-year sentence at 100% release eligibility. (*Id.* at 14, 19); Tenn. Code Ann. § 39-17-1324(a), (e), (g)(1).

---

[5]    The Court notes that one count of the indictment differs slightly from the arrest warrants, as it charged Petitioner with delivering hydrocodone, not selling it. (Doc. No. 13-1 at 7.)

The state provided a factual basis for the plea at the plea hearing. (Doc. No. 13-3 at 15.) According to the state, MNPD officers were conducting surveillance on a vehicle in which Petitioner was an occupant on February 8, 2016. (*Id.*) Officers observed Petitioner shoot a handgun into the air. (*Id.*) They took Petitioner into custody, searched the vehicle, and recovered "thirty grams of marijuana and some scales with marijuana residue." (*Id.*) At the hearing, Petitioner testified that the state's account was generally true. (*Id.* at 15–16.)

Petitioner filed a pro se petition for post-conviction relief in state court. (Doc. No. 13-1 at 20–28). The court appointed counsel (*id.* at 29–32), counsel filed an amended petition (*id.* at 33–38), and the court held a hearing (Doc. No. 13-2). The court denied relief (Doc. No. 13-1 at 42–67), the Tennessee Court of Criminal Appeals ("TCCA") affirmed, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. *Al-Khafajy v. State*, No. M2017-02392-CCA-R3-PC, 2018 WL 4771809, at *1 (Tenn. Crim. App. Oct. 2, 2018), *perm. app. denied* Jan. 16, 2019.

## III.    Claims

Petitioner initiated this action by filing a Section 2254 Petition in March 2019. (Doc. No. 1). He has since filed over a dozen motions or notices containing a mix of additional argument and long strings of legal citations. (Doc. Nos. 2, 8, 16, 18, 24, 26, 27, 29, 31, 32, 34, 35, 36.) The Court has reviewed all of these filings, and none clearly request to amend the original Petition and add additional claims for the Court's consideration. In a previous Order terminating a few of Petitioner's motions, the Court specifically explained that the Petition in this case "is to be found at Doc. No. 1 (and only Doc. No. 1)." (Doc. No. 33 at 2 n.2.) The Court advised Petitioner that "litigation of his habeas corpus petition should not involve any filings that lack a clear and proper

purpose." (*Id.* at 3.) Accordingly, the Court's consideration of Petitioner's request for habeas relief is limited to the claims asserted in the Petition at Doc. No. 1.

Because Petitioner is representing himself, however, the Court has liberally construed the Petition to the fullest practicable extent. In so doing, the Court understands Petitioner to be asserting the following claims:

1.  Trial counsel was ineffective in:

    1.A   Violating attorney-client privilege (Doc. No. 1 at 6);

    1.B   Coercing Petitioner to plead guilty (*id.*);

    1.C   The manner of litigating Petitioner's motion to reduce bond (*id.*);

    1.D   Failing to obtain discovery "to attack any contradictions" (*id.*);

    1.E   Refusing to file "certain motions" requested by Petitioner (*id.*);

    1.F   Colluding with the district attorney (*id.*);

2.  Petitioner's plea was unknowing and involuntary (*id.* at 8);

3.  There was insufficient evidence to support the offenses of conviction (*id.*);

4.  Petitioner is actually innocent (*id.* at 9);

5.  Petitioner was sentenced using an incorrect "range" (*id.*);

6.  The state withheld exculpatory evidence (*id.* at 11).

## IV.   Legal Standard

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under AEDPA, a claim "adjudicated on the merits" in state court cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2)

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486

F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

Review of claims rejected on the merits in state court ordinarily is available only to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense"—a factor

that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (quoting *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## V. Analysis

As explained below, Petitioner is not entitled to relief because his claims are either not cognizable, do not survive the demanding review of claims adjudicated on the merits in state court, or are procedurally defaulted. The Court will address each category of claims in turn.

### A. Non-Cognizable Claim

In Claim 4, Petitioner asserts that he is actually innocent based on newfound evidence consisting of a five-minute home surveillance video. (Doc. No. 1 at 9.) A "freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review." *Thomas v. Perry*, 553 F. App'x 485, 487 (6th Cir. 2014) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993) and *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007)). Accordingly, to the extent that Petitioner attempts to assert such a claim, it must be denied.

A credible claim of actual innocence may allow a federal habeas court to consider the merits of a constitutional claim that is otherwise procedurally defaulted. *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). This gateway to

review "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). A petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 324). Moreover, "[i]n cases where the [g]overnment has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Vanwinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011) (quoting *Bousley v. United States*, 523 U.S. 614, 624 (1998)).

Petitioner may not rely on the alleged video for this purpose here. He has not provided a copy of the video, described its contents in any detail, or explained how it establishes that he is actually innocent. In a note attached to one of his motions, Petitioner states that the video shows he was involved in a "simple incident that was blown out of proportion." (Doc. No. 32 at 3.) At most, this conclusory allegation reflects Petitioner's belief that the video shows his conduct to be insufficiently serious to justify the charges to which he pleaded guilty. But "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Wooten v. Cauley*, 677 F.3d 303, 307 (6th Cir. 2012) (quoting *Bousley*, 523 U.S. at 623–24). Petitioner also does not attempt to explain how the alleged video is relevant to his charge of delivering hydrocodone, a dismissed Class C felony more serious than the Class D and E felonies to which Petitioner pleaded guilty. *See* Tenn. Code Ann. § 39-17-417(c)(2) (explaining the felony class associated with delivering a Schedule II controlled substance); (Doc. No. 13-1 at 13, 19 (noting the felony class of Petitioner's conviction offenses)). Thus, Petitioner falls far short of the threshold necessary to make a credible claim of

actual innocence, and the alleged video thus does not excuse the procedural default of any of his claims.

## B. Adjudicated Claims

On post-conviction appeal, Petitioner exhausted two related claims—that his plea was unknowing and involuntary, and that his trial counsel coerced him into pleading guilty. *See Al-Khafajy*, 2018 WL 4771809, at *3–5.

### 1. Claim 2—Unknowing and Involuntary Plea

Petitioner asserts that at least one of his offenses of conviction is under the "wrong" criminal statute. (Doc. No. 1 at 8.) Respondent construes this assertion as, among other things, a claim that Petitioner's plea was not knowing and voluntary (Doc. No. 23 at 23), and the Court will do the same. In affirming the post-conviction court's judgment, the TCCA accurately identified the federal standard for determining whether a guilty plea is knowing and voluntary:

> When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). In that review, the court looks to the following factors:
>
>> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.
>
> *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993) (citing *Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.* at 904. A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding

because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

*Al-Khafajy*, 2018 WL 4771809, at *4–5.

The TCCA then rejected Petitioner's claim:

> At the post-conviction hearing, Petitioner claimed that he did not understand his sentence and that he did not understand the law requiring him to serve a mandatory minimum sentence at 100 percent. However, Petitioner admitted on cross-examination that the trial court explained the sentence at the plea acceptance hearing and that he and trial counsel discussed the plea. Trial counsel testified that he brought in another attorney to sit down and explain the mandatory minimum sentence to Petitioner. The plea colloquy itself establishes that, at the plea hearing, Petitioner knew exactly what his sentence would be on the firearm conviction, three years at 100 percent to be served consecutively to the two-year sentence on the marijuana conviction. Petitioner started to ask the trial court if there was "by any chance that the range of it, at a hundred percent," when the trial court cut him off, interjecting, "That's a particular law that you're charged with. No I can't do anything about it." The trial court went on to explain to Petitioner the definition of a dangerous felony, the requirement that the sentence be served consecutively, and the difference between "employing a firearm versus possessi[ng] a firearm during the commission of or attempt to commit a dangerous felony." Petitioner indicated that the explanation answered his questions.

> When considering the aforementioned factors, we note that Petitioner graduated from high school and was able to read. Petitioner admitted to the trial court that he was familiar with the plea process, having entered guilty pleas in the past. Trial counsel met with Petitioner and discussed plea negotiations as well as the likelihood of success at trial. Trial counsel and the trial court adequately advised Petitioner of the nature of his plea. Additionally, the post-conviction hearing focused on Petitioner's understanding of the guilty plea. Viewing the totality of circumstances with the formidable barrier created by Petitioner's declaration at the plea hearing in mind, we hold that the evidence does not preponderate against the post-conviction court's finding that Petitioner's plea was knowing and voluntary.

*Id.* at *5.

This ruling was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and it was not based on an unreasonable determination of the facts. As reflected above, the TCCA reviewed transcripts of Petitioner's plea hearing and post-conviction evidentiary hearing. During the plea colloquy, the court thoroughly explained the charges in the indictment

and the charges to which Petitioner was pleading guilty, and Petitioner testified that he understood. (Doc. No. 13-3 at 6–9.) Petitioner asked the court a question about sentencing, the court answered it, and Petitioner testified that his question had been answered. (*Id.* at 10–12.) The court specifically asked Petitioner if anyone was "forcing" him to plead guilty, and he responded, "No, ma'am." (*Id.* at 13.) The court also asked Petitioner if pleading guilty was "[his] choice," and he responded, "Yes, ma'am." (*Id.* at 14.) The TCCA appropriately noted that such plea hearing testimony "carries great weight." *Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (citing *Blackledge*, 431 U.S. at 73–74); *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], the defendant is bound by his statements in response to that court's inquiry.").

At the evidentiary hearing, Petitioner testified that counsel gave him no choice but to plead guilty. (Doc. No. 13-2 at 20–21, 24, 40–41.) But both Petitioner (*id.* at 23) and counsel (*id.* at 67–68) also testified that counsel thought entering the plea agreement was in Petitioner's best interest based on the evidence that would be presented at trial. Counsel testified that he did not physically coerce or threaten Petitioner (*id.* at 67–68), but rather attempted to explain to Petitioner his view of the seriousness of the charges and the evidence (*id.* at 58–59, 65–67).

The state court generally credited counsel's testimony. *Al-Khafajy*, 2018 WL 4771809, at *3. This credibility finding is "entitled to 'great deference' and 'must be sustained unless [it is] clearly erroneous,' particularly in the context of AEDPA-limited habeas review." *Howell v. Hodge*, 710 F.3d 381, 386 (6th Cir. 2013) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)). Moreover, "[a] state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear

and convincing evidence." *Wright v. Lafler*, 247 F. App'x 701, 705 (6th Cir. 2007) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). Here, Petitioner does not approach the high bar of demonstrating that the TCCA's credibility determination was "clearly erroneous," and he also has not presented evidence to rebut the state court's presumptively correct finding that he entered a valid guilty plea. Accordingly, Claim 2 will be denied.

### 2.     Claim 1.B—Ineffective Assistance of Counsel

Petitioner next asserts that counsel coerced him into pleading guilty. (Doc. No. 1 at 6.) The federal law governing the adequacy of a criminal defendant's representation is defined in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Premo v. Moore*, 562 U.S. 115, 121 (2011). The TCCA correctly identified this standard before rejecting this claim on the merits. *Al-Khafajy*, 2018 WL 4771809, at *3–4.

Under *Strickland*, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Id.* at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

When a petitioner claims that "ineffective assistance led to the improvident acceptance of a guilty plea," the prejudice prong of *Strickland* requires him to "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would

have insisted on going to trial.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The Supreme Court has explained the heavy burden a petitioner bears in these circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

Here, Petitioner makes a string of conclusory assertions that counsel "coerced," "misle[]d," and "induced" Petitioner, that he "threatened [Petitioner's] life," and that he threatened to withdraw if Petitioner did not take the plea. (Doc. No. 1 at 6.) Similar assertions are present throughout Petitioner's filings. (*See, e.g.*, Doc. No. 8 at 3; Doc. No. 27 at 2, 5–6; Doc. No. 29 at 8; Doc. No. 34 at 16; Doc. No. 35 at 5.)

The TCCA reasonably rejected this claim, noting that Petitioner "merely refer[red] to his own testimony" at the evidentiary hearing, which the state court found to be less credible than

counsel's contrary testimony. *Al-Khafajy*, 2018 WL 4771809, at *4. The Court must defer to this credibility finding as long as it is not "clearly erroneous." *Howell*, 710 F.3d at 386 (quoting *Felkner*, 562 U.S. at 598). Moreover, the voluntariness of Petitioner's plea is addressed above, and the TCCA's determination on this issue—that Petitioner failed to carry his burden of demonstrating that his guilty plea was unknowing and involuntary—was not unreasonable. Simply put, Petitioner's assertion that counsel coerced him to plead guilty does not entitle him to relief, because the record reflects that the plea was knowing and voluntary. *See Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750–51 (E.D. Mich. 2005) (citations omitted) (finding petitioner's "bare claims that his counsel coerced him" to enter a plea "insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any force or threats had been used to get him to enter his plea"). Claim 1.B will be denied.

### C.   Procedurally Defaulted Claims

Petitioner's remaining claims are procedurally defaulted without cause.

#### 1.   Claim 3—Insufficient Evidence

In claiming that at least one of his convictions is under the "wrong" statute, Petitioner also asserts that his conduct did not satisfy the elements of his offenses of conviction. (Doc. No. 1 at 8, 12.) This argument, too, is a common refrain throughout Petitioner's filings. (*See, e.g.*, Doc. No. 2 at 2, 14; Doc. No. 8 at 3; Doc. No. 16 at 3–4, 12; Doc. No. 16-2 at 5–6, 11; Doc. No. 18 at 5; Doc. No. 27 at 8; Doc. No. 29 at 8–9; Doc. No. 36 at 2.)

The Court construes this as a claim that there was insufficient evidence to support his convictions under the particular statutes charged. Petitioner did not present such a claim to the TCCA, and any attempt to do so now would be untimely and restricted by Tennessee's "one-

petition" limitation on post-conviction relief. Tenn. R. App. P. 4; Tenn. Code Ann. §§ 40-30-102(a), (c). This claim is therefore defaulted.

Petitioner generally asserts that he did not raise certain claims during the post-conviction proceedings because post-conviction counsel was ineffective. (Doc. No. 1 at 7 ("[M]y post-conviction attorney has also not included anything in any amended petition."); *id.* at 9 (alleging that post-conviction counsel did not communicate with him or raise requested claims); *id.* at 10 (alleging that post-conviction counsel did not "state everything [Petitioner] ask[ed]"); *id.* at 11 ("[Post-conviction c]ounsel did not do nothing but appeal and never spoke to me.").) Post-conviction counsel's ineffectiveness cannot be an independent ground for federal habeas relief, but a petitioner may, in some circumstances, rely on it to establish cause "to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

Petitioner, however, may not rely on *Martinez* with respect to this claim. The Supreme Court has strictly limited *Martinez*'s reach to defaulted claims of "ineffective assistance of counsel at trial." *Davila*, 137 S. Ct. at 2065–66. This does not include claims of insufficient evidence. So post-conviction counsel's alleged ineffectiveness, in the form of failure to adequately press claims of insufficiency of the evidence at trial, cannot excuse a procedural default. Accordingly, Claim 3 will be denied as procedurally defaulted without cause.

Additionally, even if this claim were subject to further review, it would fail on the merits. To the extent that Petitioner challenges the sufficiency of the factual basis for his guilty plea, this claim "is not cognizable in federal habeas." *Bonior v. Conerly*, 416 F. App'x 475, 478 (6th Cir. 2010). And by pleading guilty, Petitioner waived a challenge to the sufficiency of the evidence

supporting his convictions. *Post v. Bradshaw*, 621 F.3d 406, 426–27 (6th Cir. 2010) (citing *United States v. Freed*, 688 F.2d 24, 25–26 (6th Cir. 1982)).

### 2. Claim 5—Invalid Sentence

Petitioner also asserts that he was sentenced using an incorrect "range." (Doc. No. 1 at 9.) This claim is procedurally defaulted because Petitioner did not present it to the TCCA, and he can no longer do so. And because this is not an ineffective-assistance-of-trial-counsel claim, Petitioner cannot rely on any alleged post-conviction attorney ineffectiveness to excuse its default, as discussed above. Claim 5 will be denied for this reason.

Even if this claim had not been procedurally defaulted, it would not be cognizable. Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "[T]he Supreme Court has 'stated many times that federal habeas corpus relief does not lie for errors of state law.'" *Thomas v. Stephenson*, 898 F.3d 693, 700 (6th Cir. 2018) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). This includes asserted errors in the application of state sentencing law. *See Noonan v. Burton*, No. 17-2459, 2018 WL 6584905, at *3 (6th Cir. Oct. 15, 2018) (citing *Estelle*, 502 U.S. at 67) ("[T]o the extent that [the petitioner] alleges that the trial court's sentencing decision violated state law, his claim is not cognizable on federal habeas review."). Here, Petitioner does not even attempt to argue this sentencing claim as a matter of federal law, so it could not entitle Petitioner to relief even if he had exhausted, rather than procedurally defaulted, it in state court.

### 3. Claim 6—Withholding Exculpatory Evidence

Next, Petitioner asserts that the state withheld exculpatory evidence. (Doc. No. 1 at 11.) Although the alleged facts supporting this claim are somewhat unclear, Petitioner seems to assert that the state did not disclose evidence reflecting that he was improperly charged for crimes related

to two other individuals arrested around the same time as him—Ahmed Al-Khafajy (Petitioner's brother) and Kareem Hantouli. (*See id.*) Petitioner advances a related "misidentification" theory in several other filings. (*See, e.g.*, Doc. No. 27 at 1; Doc. No. 29 at 8–9; Doc. No. 31 at 3; Doc. No. 34 at 13–16; Doc. No. 36 at 2.)

Under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Wogenstahl v. Mitchell*, 668 F.3d 307, 323 (6th Cir. 2012) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "To succeed on a *Brady* claim, a petitioner must establish: (1) the existence of favorable evidence, either exculpatory or impeaching; (2) that the evidence was suppressed; and (3) that the suppression resulted in prejudice." *Hill v. Mitchell*, 842 F.3d 910, 926 (6th Cir. 2016) (citing *Strickland v. Greene*, 527 U.S. 263, 281–82 (1999)). For a petitioner who pleaded guilty to establish the "prejudice" element of this claim, he must demonstrate "a reasonable probability that, but for the non-disclosure of evidence, 'he would not have [entered his plea] and would have insisted on going to trial.'" *Fautenberry v. Mitchell*, 515 F.3d 614, 629 (6th Cir. 2008) (quoting *Hill*, 474 U.S. at 59).

Here, Petitioner did not present a *Brady* claim to the state courts, and he does not provide any viable excuse for this default. He cannot, for example, rely on the alleged ineffectiveness of post-conviction counsel as cause because *Martinez*—applying as it does only to claims of ineffective assistance of trial counsel, as discussed above—does not apply to "claims of *Brady* violations and prosecutorial misconduct." *Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015) (citations omitted).

In an appropriate case, a petitioner may point to the prosecution's "suppression of the relevant evidence" as the very reason he was unable to present a *Brady* claim to the state courts before filing a federal habeas petition. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004). Not so here. Petitioner makes a conclusory allegation that the state withheld evidence "collected and seized and stored by law Enforcement personnel during th[e] investigation." (Doc. No. 1 at 11.) But he also seems to recognize that the collected evidence was disclosed on "property/evidence reports," including MNPD form 110 (*id.*), that were referenced in the "State's Response to Request for Discovery." (*See* Doc. No. 21-1 at 30–33.) This discovery response is dated August 8, 2016 (*id.* at 30)—more than six weeks prior to Petitioner's pleading guilty. And Petitioner has not alleged that he was unaware of this evidence, either at the time of his plea or during his post-conviction proceedings. Accordingly, this claim has been procedurally defaulted without cause.

### 4. Claims 1.A, 1.C, 1.D, 1.E, 1.F—Ineffective Assistance of Counsel

Five claims of ineffective assistance of trial counsel remain. Petitioner did not present these claims to the TCCA, and there is no remaining avenue for him to do so, so they are procedurally defaulted. As stated above, in some circumstances, a petitioner may rely on post-conviction counsel's ineffectiveness to establish the cause necessary to obtain review of a procedurally defaulted claim of ineffective assistance of trial counsel. *Davila*, 137 S. Ct. at 2065–66. Because the Petition includes several allegations of post-conviction counsel's ineffectiveness (*see* Doc. No. 1 at 7, 9–11), the Court will consider whether *Martinez* applies to these five claims.

In Claims 1.D and 1.E, respectively, Petitioner asserts that counsel failed to obtain discovery and failed to file Petitioner's requested pretrial motions. (Doc. No. 1 at 6.) Post-conviction counsel raised these same claims in the amended post-conviction petition (Doc. No. 13-1 at 35), the trial court rejected them (*id.* at 61–63), and Petitioner did not present them to the

TCCA on post-conviction appeal. *See Al-Khafajy*, 2018 WL 4771809, at *4 ("[I]n Petitioner's brief, . . . [he] merely refers to his own testimony about trial counsel's alleged lack of communication, failure to explain the charges, and threat to withdraw if Petitioner did not take the guilty plea."). Ineffective assistance of post-conviction counsel can act as cause only when the ineffectiveness occurs at the initial review stage, not the appeal stage. *Atkins*, 792 F.3d at 661 (emphasis added) (quoting *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)) ("[A]ttorney error at state post-conviction appellate proceedings cannot excuse procedural default."). Accordingly, because the trial court ruled on Claims 1.D and 1.E, *Martinez* does not apply and they will be denied as procedurally defaulted.

Petitioner did not raise Claims 1.A, 1.C, and 1.F in his initial post-conviction proceedings. Thus, in theory, *Martinez* conceivably could apply to excuse their default. To determine whether Petitioner has effectively demonstrated cause, the Court considers "(1) whether state post-conviction counsel was ineffective; and (2) whether [Petitioner's defaulted] claims of ineffective assistance of [trial] counsel were 'substantial.'" *Atkins*, 792 F.3d at 660 (citations omitted). If Petitioner demonstrates cause, then the Court must consider "whether [he] can demonstrate prejudice." *Id.* And if (but only if) Petitioner establishes both "cause" and "prejudice," the Court would then "evaluate [his underlying ineffective assistance of counsel] claims on the merits." *Id.* (citations omitted).

Here, Petitioner has not demonstrated that his remaining three claims are substantial. "A substantial claim is one that has some merit and is debatable among jurists of reason." *Abdur'Rahman*, 805 F.3d at 713 (citing *Martinez*, 566 U.S. at 14). "In the converse, a claim is insubstantial when 'it does not have any merit,' 'is wholly without factual support,' or when 'the attorney in the initial-review collateral proceeding did not perform below constitutional

standards.'" *Porter v. Genovese*, 676 F. App'x 428, 432 (6th Cir. 2017) (quoting *Martinez*, 566 U.S. at 15–16).

In Claim 1.A, Petitioner makes the conclusory assertion that counsel violated attorney-client privilege. (Doc. No. 1 at 6.) As a general matter, "the 'attorney-client privilege is a creation of the common law, not the Constitution,'" so a violation of the "privilege is not *itself* a 'violation [ ] of the United States Constitution or its laws and treaties,' as is required by § 2254 before [the Court] may issue habeas on a given claim." *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) (quoting *Lange v. Young*, 869 F.2d 1008, 1012 n.2 (7th Cir. 1989)). Without explaining how some specific breach of confidentiality resulted in a violation of federal law or the Constitution, therefore, this claim is meritless.

In Claim 1.C, Petitioner asserts that counsel "critically failed" in litigating a motion to reduce bond, resulting in his bond's being increased. (Doc. No. 1 at 6.) This claim is insubstantial for two reasons. First, Petitioner does not specifically explain how counsel's performance at the bond reduction hearing was deficient or identify any arguments counsel should have made. Second, "[c]laims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived." *Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) and discussing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Accordingly, Claim 1.C is not substantial.

In Claim 1.F, Petitioner asserts that counsel "collude[d]" with the district attorney. (Doc. No. 1 at 6.) Petitioner does not support this claim with any specific factual allegations. Thus, it is a "conclusory and perfunctory" claim of ineffective assistance of trial counsel that is "insufficient to overcome the presumption of reasonable professional assistance and [is] insufficient to warrant habeas relief." *Wogenstahl*, 668 F.3d at 323. Claim 1.F will be denied as insubstantial.

**VI.      Discovery Motions (Doc. Nos. 24, 26, 27, 36)**

In the first two pending discovery motions (Doc. Nos. 24, 26), Petitioner requests printed transcripts of the preliminary hearing and bond reduction hearing.[6] (Doc. No. 24 at 1, 4; Doc. No. 26 at 1–2, 4.) Respondent opposes this request, stating that these transcripts are not part of the state court record. (Doc. No. 25 at 1–2.) Respondent also sent the Court (Doc. No. 22 (Respondent's Notice of Filing)) and Petitioner (*see* Doc. No. 26 at 2 (Petitioner's acknowledgment of receipt)) a CD containing an audio recording of the preliminary hearing.

Petitioner requests these printed transcripts to "point out" his "state remedies" (Doc. No. 24 at 1) and "state ramifications" (Doc. No. 26 at 1), as well as counsel's asserted ineffectiveness during these proceedings (*id.* at 2, 4). But as explained above, the state court determined that Petitioner's guilty plea was knowing and voluntary, and that it was not the result of coercion by counsel. This Court was able to, and did, conclude that the state court's rulings were not unreasonable, without need to rely on the contents of the preliminary hearing and bond hearing. Because the state court reasonably concluded that Petitioner entered a valid plea, Petitioner may not assert independent claims of pre-plea ineffectiveness. *See Rice*, 2016 WL 3877866, at *2 (quoting *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007) ("A valid, unconditional guilty plea waives all 'constitutional violations occurring prior to a plea of guilty once the defendant enters his plea' unless expressly preserved in a plea agreement or at a plea hearing.")). Petitioner's request for printed transcripts of pre-plea proceedings to support his assertions of counsel's ineffectiveness at those proceedings, therefore, will be denied.

---

[6]      In the first motion, Petitioner also requests transcripts of "Trial date" proceedings. (Doc. No. 24 at 1.) It is unclear what this request refers to, and Petitioner acknowledges that he received a printed copy of the plea hearing transcript. (Doc. No. 26 at 2.) Regardless, Petitioner seems to abandon this request in the second motion by focusing therein solely on the preliminary hearing and bond reduction hearing. (*See id.* at 1–2.)

Next, in the third pending discovery motion (Doc. No. 27) and a related notice (Doc. No. 29), Petitioner submits filings labeled as proposed interrogatories and requests for admission in an apparent effort to comply with Habeas Rule 6(b) (stating that a party requesting discovery must "include any proposed interrogatories and requests for admission, and must specify any requested documents"). Respondent opposes Petitioner's efforts. (Doc. Nos. 28, 30.)

Habeas petitioners do not have a "right to automatic discovery." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Under Habeas Rule 6(a), the Court must find "good cause" to authorize a party to conduct discovery. This rule "embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Id.* (quoting *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997)). "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Cornwell v. Bradshaw*, 559 F.3d 398, 409 (6th Cir. 2009) (quoting *Williams*, 380 F.3d at 974).

Here, Petitioner's proposed interrogatories and requests for admission predominantly consist of legal citations (Doc. No. 27 at 1, 6–8; Doc. No. 29 at 2–6, 10–11) and conclusory allegations of prosecutorial misconduct by the state, ineffective assistance by trial counsel, and improper sentencing by the court (Doc. No. 27 at 2–6, 8–9; Doc. No. 29 at 6–9). Petitioner also continues to advance a theory that he was "misidentified" and held responsible for other individuals' conduct in his case (Doc. No. 27 at 1–2; Doc. No. 29 at 8–9), and he seems to request the recusal of the state trial court judge (Doc. No. 27 at 9). Thus, despite their labels, these filings

(Doc. Nos. 27, 29) do not comply with Rule 6(b)'s requirement that the party seeking discovery "include any proposed interrogatories and requests for admission."

Petitioner also has not established good cause for this requested discovery. The primary focus of these filings, it seems, is to question, or collect information from, trial counsel and a prosecutor assigned to his case to challenge the knowing and voluntary nature of his plea. (*See* Doc. No. 29 at 3 ("Petitioner Request's that the Defendant-Doug Thurman, Cleveland D. Bain, Answers the following Interrogatories Under Oath . . . .").) Again, however, the state court already considered and rejected Petitioner's claim that the guilty plea was unknowing and involuntary, as well as his claim that trial counsel was ineffective for coercing Petitioner to plead guilty. "A federal habeas court's review of 'any claim that was adjudicated on the merits in State court proceedings' is limited to the evidence presented in the state proceeding." *Smith v. Carpenter*, No. 3:99-cv-0731, 2018 WL 317429, at *4 (M.D. Tenn. Jan. 8, 2018) (citing *Pinholster*, 563 U.S. at 181–82). At this juncture, therefore, the Court could not consider any new evidence regarding the state court's determination of these claims. For all of these reasons, Petitioner's third pending discovery motion (Doc. No. 27) will be denied.

Finally, in the fourth pending discovery motion (Doc. No. 36), Petitioner asks to "subpoena All physical evidence" in his criminal case "to conclude if the evidence is actually present in the evidence locker" because he was "misidentified." (*Id.* at 2.) This request will be denied as an impermissible "fishing expedition." *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)) ("Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'").

## VII.    ICE Detainer Motion (Doc. No. 34)

While he was incarcerated at Metro-Davidson County Detention Facility, Petitioner filed a motion challenging an ICE detainer lodged against him. (*See* Doc. No. 34 at 1, 19.) The Court has taken judicial notice that Petitioner is now in ICE custody at Jackson Parish Correctional Center in Jonesboro, Louisiana. *Supra* Section I. As a technical matter, therefore, Petitioner's desire to challenge the detainer itself is now moot. But more importantly, for the reasons stated throughout this Memorandum Opinion, the Court has determined that Petitioner is not entitled to habeas corpus relief from his September 2016 state court judgments under Section 2254. And so, this Section 2254 action is not the proper vehicle for challenging the validity of Petitioner's current detention by ICE.

At this stage, the appropriate vehicle for challenging Petitioner's detention by ICE is litigation of his removal proceedings. Alternatively, it may be possible for Petitioner to raise certain challenges to the validity of his detention through a habeas corpus petition filed under 28 U.S.C. § 2241. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (Thomas, J., concurring) (acknowledging that a majority of the Supreme Court found it had jurisdiction to consider the merits of a habeas petition challenging ICE detention prior to final removal order); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that Section "2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"). The Court notes that the proper federal district court in which to file such a Section 2241 petition would be Petitioner's current district of confinement, *see Rumsfeld*, 542 U.S. at 443, and it takes judicial notice that Jackson Parish is within the Western District of Louisiana. 28 U.S.C. § 98(c). However, the Court makes no representations regarding the viability of any Section 2241 petition Petitioner may file.

## VIII.   Conclusion

For these reasons, Petitioner is not entitled to relief under Section 2254. The Petition (Doc. No. 1), Petitioner's discovery-related motions (Doc. Nos. 24, 26, 27, 36), and Petitioner's ICE detainer motion (Doc. No. 34) will be denied. His remaining pending motions (Doc. Nos. 31, 32, 35) will be denied as moot.

Because this constitutes a "final order adverse to" Petitioner, the Court must grant or deny a certificate of appealability ("COA"). Habeas Rule 11(a). A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484). For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will deny a COA.

An appropriate Order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE